The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below.



**/S/ RUSS KENDIG**

Russ Kendig
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| JOSEPH J. DETWEILER, | CASE NO. 09-63377 |
| Debtor. | ADV. NO. 09-6105 |
| TENNESSEE COMMERCE BANK, | JUDGE RUSS KENDIG |
| Plaintiff, | |
| v. | |
| JOSEPH J. DETWEILER, | **MEMORANDUM OF OPINION (NOT INTENDED FOR PUBLICATION)** |
| Defendant. | |

On April 14, 2010, Plaintiff filed a motion for summary judgment seeking a court finding of nondischargeability under 11 U.S.C. § 523(a)(6). Defendant opposed the motion with the filing of a response on May 4, 2010. Subsequently, Plaintiff filed a reply memorandum. Defendant moved to strike the reply as untimely on May 25, 2010. The motion to strike is unopposed.

The court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334 and the general order of reference entered in this district on July 16, 1984. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. 157(b)(I). The following constitutes the court's findings of facts and conclusions of law under Federal Rule of Bankruptcy Procedure 7052.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the Court.

## FACTS

The parties do not contest the underlying facts. Debtor is the principal of J.J. Detweiler Enterprises, Inc. (hereafter JJDE, Inc.). In 2007, Debtor, on behalf of JJDE, Inc., entered into various financing agreements to purchase several pieces of equipment. American Bank Leasing Corporation provided the financing; it later assigned its interests to Plaintiff. The loans were secured by interests in the equipment and the security interests were properly perfected by the filing of UCC financing statements. Pursuant to the financing agreements, JJDE, Inc. could not transfer, assign or convey the equipment without the lender's consent. The loans were personally guaranteed by Debtor.

On or about December 23, 2008, JJDE, Inc. sold the equipment for $70,000.00. JJDE, Inc. received payments totaling $65,000.00; $5,000.00 remains unpaid. The proceeds from the sale of the equipment was not paid to Plaintiff and Plaintiff never authorized the sale of its collateral. Debtor was instrumental in making the decision to sell the equipment. At the time of the sale, JJDE, Inc. was short on cash and the sale was made to keep the business afloat. Debtor used the money to pay business expenses and testified that he intended to continue making the installment payments on the loans owed Plaintiff following the sale.

## LAW AND ARGUMENT

Plaintiff moves for summary judgment, arguing that there is no dispute that Debtor's actions in selling Plaintiff's collateral without its authorization was a willful and malicious injury under 11 U.S.C. § 523(a)(6), thereby rendering the debt nondischargeable. Relying on Debtor's stated intention to continue paying the debt owed Plaintiff, Defendant asserts the requisite intent is absent from the "willful and malicious" equation, or at least a factual issue, making summary judgment inappropriate.

Motions for summary judgment are governed by Federal Rule of Bankruptcy Procedure 7056, which incorporates Federal Rule of Civil Procedure 56, and states, in applicable part:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Bankr. P. 7056. The movant bears the initial burden of proof, being tasked with the "responsibility of informing the . . . court of the basis for its motion, and identifying those

2

portions [of the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In reviewing the evidentiary materials, the facts and inferences arising therefrom are to be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

According to Plaintiff, Defendant's act of conversion "constitutes a willful and malicious injury under § 523(a)(6)." (Plaintiff's M. Summ. J., p. 6). Plaintiff relies on CMEA Title Agency, Inc. v. Little, 335 B.R. 376, 386 (Bankr. N.D. Ohio 2005). Plaintiff's contention is not an accurate representation of the law, as both this court and the court in Little concluded. See Little at 387 ("finding that Little engaged in conversion, however, does not excuse CMEA of its burden of showing that Little's conduct was willful and malicious"); Richland Trust Co. v. Haley (In re Haley), Case No. 06-61593, Adv. No. 06-6214 at 4 (October 19, 2007) (unpublished) (concluding that summary judgment could not be granted when the act was intentional, but it was not clear that the injury was intentional). As noted in the Little and Haley cases, intent is not an element of conversion, but it is an element for finding a willful and malicious injury under section 523(a)(6). Thus, the fact that Defendant intentionally sold the equipment is not sufficient. He must have also intended the harm that resulted to Plaintiff. See Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998); Markowitz v. Campbell (In re Markowitz), 190 F.3d 455, 464 (6th Cir. 1999). Following Geiger, the Sixth Circuit Court of Appeals revisited section 523(a)(6) and expounded on the "intent to harm" element and adopted an interpretation based on the working definition of intentional torts from the Restatement (Second) of Torts: "unless ' the actor desires to cause [the] consequences of his act, or . . . believes that the consequences are substantially certain to result from it,' Restatement (Second) of Torts § 8A, at 15 (1964), he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)." Markowitz, 190 F.3d at 464. In the Fourth Circuit, courts employ a similar test, referenced as the "objective substantial certainty" or "subjective motive" analysis, to assess the intent to injure. See, e.g., Ocean Equity Group, Inc. v. Wooten ( In re Wooten), 423 B.R. 108 (Bankr. E.D. Va. 2010) (citations omitted).

The court notes an incongruity in applying the Geiger test, and its progeny, to the present facts. Geiger had been found liable for medical malpractice. When he filed bankruptcy, his former patient sought to have the debt deemed nondischargeable. She was not successful. There was no question that the doctor acted negligently and/or recklessly, but the Supreme Court framed the question as whether "§ 523(a)(6)'s compass cover[s] acts, done intentionally, that cause injury . . . or only acts done with the actual intent to cause injury . . .?" Geiger, 523 U.S. at 61. The Supreme Court ultimately found that "debts arising from recklessly or negligently inflicted injuries do not fall with the compass of § 523(a)(6)." Id. at 64.

In the context of medical malpractice, it is often much easier to grasp the contrast between the act and the injury, specifically how one could intend the act but not the injury.

3

It is less understandable when conversion of secured collateral is involved because it is difficult to perceive how knowingly disposing of a secured creditor's collateral cannot be equated with an intent to injure the creditor.[1] The willful deprivation of substantial rights that are fundamental to the debtor-creditor relationship is a perceptible and known injury. There's a strong argument that negative consequences are "substantially certain to result" from the loss of the creditor's bargained-for protection. Case law, however, requires more.

Prior to Geiger, the Supreme Court examined conversion as a "willful and malicious injury". See Davis v. Aetna Acceptance Co., 293 U.S. 328 (1934). Debtor, an automobile salesman, engaged in the equivalent of floor-plan financing for the vehicles he sold. Davis was based on his failure to pay the proceeds from a sale to the lender following a sale of a vehicle, followed shortly by a bankruptcy filing. In Davis, the Supreme Court separated the intent to commit the tort with the intent to commit the injury: "a willful and malicious injury does not follow as of course from every act of conversion, without reference to the circumstances." Id. at 332. It is here that the necessity of a factual inquiry arises.

Looking at the facts, there is no dispute that Defendant intended to sell the equipment, to which he testified in his deposition. (Dep. of Joseph J. Detweiler, doc. 24, p. 4). He further stated he intended to continue making the regular payments to the lender. (Dep. of Joseph J. Detweiler, doc. 24, p. 6). Plaintiff failed to identify any portion of the record regarding Debtor's intent to cause the injury to Plaintiff. This is unlike section 523(a)(4) in which a plaintiff accusing a debtor of committing fraud while in a fiduciary capacity need not prove the subjective intent to cause the monetary damage.[2] Although Plaintiff argues that the injury would necessarily flow from the action, this does not satisfy Plaintiff's burden. The court finds that a genuine issue of material facts exists on the question of whether Defendant intended to injure Plaintiff, constraining decision as a matter of law. Plaintiff's motion for summary judgment will be denied.

---

[1] Martello v. Fowers (In re Fowers), 360 B.R. 888, 901 (Bankr. N.D. Ind. 2007) provides elucidation of this quandary by giving "collateral conversion" scenarios which implicate different views on intent to injure. Under the first example, the debtor is "stiffed" by the purchaser, leaving him with no funds to pay the creditor. In another scenario, the debtor sells the collateral, pockets the proceeds, and disappears. As aptly noted by the court, most cases fall in the spectrum between these two examples.

[2] This subjective requirement may appear to amount to a "get out of jail free" card: virtually any act that undermines the entire relationship that a secured creditor bargained could still be dischargeable as long as it was accomplished with a subjective intent to repay. The cases require more than the destruction of the secured creditors rights, so long as the debtor subjectively intended to pay. The cases, including Davis, focus on the intent to pay rather than the willful damage to secured rights.

4

09-06105-rk    Doc 34    FILED 07/09/10    ENTERED 07/09/10 11:12:42    Page 4 of 5

Turning to Defendant's motion to strike, the court will also deny the motion to strike Plaintiff's reply memorandum. It is clear that the reply was not timely filed. Upon review, the reply memorandum did not raise arguments that were substantially different from those presented in the motion for summary judgment and Defendant was not prejudiced by the untimely filing. As a result, the court does not find good cause to strike the reply.

An appropriate order shall be entered in conjunction with this opinion.

# # #

**Service List:**

Christy A. Prince
65 East State Street
Suite 1800
Columbus, OH 43215

Kenneth R Cookson
65 East State Street
18th Floor
Columbus, OH 43215

Anthony J DeGirolamo
116 Cleveland Ave., N.W.
Suite 307
Canton, OH 44702

Scott M Zurakowski
PO Box 36963
4775 Munson St NW
Canton, OH 44735-6963